2011 UT App 127

**Joan HENDERSON, Petitioner,**

v.

**LABOR COMMISSION, Workforce Staffing Services; and Workers' Compensation Fund, Respondents.**

No. 20091091–CA.

Court of Appeals of Utah.

April 21, 2011.

Raymond N. Malouf, Logan, for Petitioner.

Hans M. Scheffler, Sandy, and Alan L. Hennebold, Salt Lake City, for Respondents.

Before Judges McHUGH, ORME, and VOROS.

## MEMORANDUM DECISION

VOROS, Judge:

¶ 1 Joan Henderson (Claimant) seeks review of a decision of the Utah Labor Commission (the Commission) denying workers' compensation benefits. We affirm.

¶ 2 On May 2, 2007, Claimant was working as a flagger directing traffic on a road construction project in northern Utah. Approximately one hour into her shift, at around 7:30 or 7:45 a.m., Claimant fell to the ground and sustained injuries to her head. Claimant filed a claim for workers' compensation benefits and alleged that she tripped backward over the base of a traffic barrel. After an evidentiary hearing, an administrative law judge (the ALJ) denied her claim on the ground that Claimant's injury was caused by a syncopal (fainting) episode that did not arise out of her employment on the construction site. Claimant appealed this decision to the Commission, which adopted the ALJ's findings of fact and affirmed the ALJ's decision.

■■■ ¶ 3 Compensation for a work-related injury is governed by Utah Code section 34A–2–401:

An employee ... who is injured ... by accident arising out of and in the course of the employee's employment ... shall be paid compensation for loss sustained on account of the injury.

Utah Code Ann. § 34A–2–401(1) (2005). This section sets forth two prerequisites to recovery. "First, the injury must be 'by accident.' Second, the language 'arising out of or in the course of employment' requires that there be a causal connection between the injury and the employment." *Allen v. Industrial Comm'n*, 729 P.2d 15, 18 (Utah 1986). The causation prerequisite has two subparts: (1) legal causation, which tests "[w]hether an injury arose out of or in the course of employment," *id.* at 25, and (2) medical causation, which tests whether "the disability is medically the result of an exertion or injury," *id.* at 27.

■■■ ¶ 4 Before the ALJ, Claimant's factual theory was that she was injured by tripping over a barrel, not from fainting. Similarly, on appellate review, her primary argument is that the Commission's finding that she fainted is not supported by substantial evidence in the record. "An administrative agency's findings of fact will be reversed 'only if the findings are not supported by substantial evidence.'" *Smith v. Department of Workforce Servs.*, 2010 UT App 382, ¶ 6, 245 P.3d 758 (quoting *Drake v. Industrial Comm'n*, 939 P.2d 177, 181 (Utah 1997)); Utah Code Ann. § 63G–4–403(4)(g) (2008). "Substantial evidence exists when the factual findings [are supported by] more than a mere scintilla of evidence ... though something less than the weight of the evidence." *Martinez v. Media–Paymaster Plus/Church of Jesus Christ of Latter-Day Saints*, 2007 UT 42, ¶ 35, 164 P.3d 384 (omission in original) (internal quotation marks omitted). In addition, "[a]n administrative law decision meets the substantial evidence test when a

reasonable mind might accept as adequate the evidence supporting the decision." *Id.* (internal quotation marks omitted).

¶ 5 The Commission's finding that Claimant fainted is supported by substantial evidence. A witness present when Claimant fell testified that he observed Claimant fall to her left side, stand up teetering, fall forward, stand up again, then fall backward. He also testified that he did not think she was close enough to the barrel to trip over it. The incident report, filed by emergency personnel called to the scene, notes that "[i]t was reported [Claimant] began to feel dizzy and then fainted," and that Claimant said she "had one syncope fainting spell about 30 days prior" and "is seeing a doctor for her blood pressure and fainting." The incident report lists "syncopal episode" as the chief complaint and "syncope/fainting" as the primary impression of the incident. After the incident, Claimant was transported to Logan Regional Hospital. Her records there state that Claimant "was witnessed by employees and passersby to have fainted and fell and hit her head." The medical records also note that Claimant was diagnosed as hypokalemic (potassium deficient) and was given potassium supplements. The medical records further note that Claimant "essentially looked malnourished," a likely "reason why she had the syncopal episodes."

¶ 6 In addition to the foregoing evidence that Claimant fainted, Claimant herself stated as much. The day after her fall, Claimant sought medical treatment from Gateway Medical, where she reported that she "[w]as working as a flagger when she suddenly felt dizzy and fainted." Over two months after her fall, while seeking treatment at Bear River Mental Health, Claimant similarly reported, "I used to be a flagger. I passed out May 2, 2007, and hit my head three times." Subsequently, Claimant went back to Gateway Medical "to get [a] work note regarding her syncope in May [2007]." Regarding the work note, Gateway Medical's report states that Claimant "desire[d] it to state that [her syncope was] due to dehydration."

¶ 7 However, after the Commission initially denied Claimant's claim for workers' compensation, Claimant went back to Gateway Medi-

cal to request another letter regarding her accident. The Gateway Medical report from this visit notes that Claimant "now says that she actually didn't pass out, but tripped over a barrel and then hit her head." This was the first time Claimant alleged that she tripped over a traffic barrel.

¶ 8 Claimant's brief on appellate review does identify inconsistencies in the record supporting the Commission's ruling, such as conflicting evidence as to whether Claimant was taking blood pressure medication at the time of her injury. However, on this record, as summarized above, we cannot say that the Commission's factual findings " 'are not supported by substantial evidence,' " *Smith,* 2010 UT App 382, ¶ 6, 245 P.3d 758 (quoting *Drake,* 939 P.2d at 181).

¶ 9 Claimant also contends on appellate review that, even if she fainted, her fall was an industrial accident within the definition of the Workers' Compensation Act. *See* § 34A–2–401 (2005). In other words, Claimant challenges the Commission's finding that her fainting episode did not arise out of her employment. As noted above, to be covered by the Act, the injury must occur by "by accident"; in addition, there must be "a causal connection between the injury and the employment." *See Allen v. Industrial Comm'n,* 729 P.2d 15, 18 (Utah 1986). The ALJ found that only two doctors drew a medical causal connection between Claimant's medical condition and the accident, and neither of them drew a medical causal link between her syncope and her work. Claimant does not directly attack this finding. Rather, she makes generalized claims of causation, such as "[d]irect and cross-examination testimony by all the witnesses supports the finding of medical causation" and "[g]iven the circumstances of [Claimant's] work, ordinary work exertion on a hot day could cause a syncopal episode which would not have happened at home, if petitioner was dehydrated, making the syncope work-related." But Claimant points to no evidence in the record to support these claims. This is hardly surprising, considering that her factual theory before the ALJ was that her injury was not caused by fainting but by tripping. Again, Claimant has not demonstrated that

the Commission's findings "are not supported by substantial evidence." *Smith,* 2010 UT App 382, ¶ 6, 245 P.3d 758; Utah Code Ann. § 63G–4–403(4)(g) (2008).

¶ 10 Accordingly, we affirm.

¶ 11 WE CONCUR: CAROLYN B. McHUGH, Associate Presiding Judge and GREGORY K. ORME, Judge.